337 So.2d 214 (1976)
STATE of Louisiana
v.
Judy TORNABENE.
No. 57717.
Supreme Court of Louisiana.
September 13, 1976.
*215 Sheldon G. Fernandez, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Metairie, for plaintiff-appellee.
DENNIS, Justice.
Defendant Judy Tornabene was convicted of possession with intent to distribute codeine in violation of La.R.S. 40:967(A) and sentenced to serve six years at hard labor. She appealed relying on six assignments of error.
On June 1, 1975, defendant's purse containing $3500 was found near a New Orleans bank which had been robbed two days earlier. The purse was turned over to local police who related the discovery to F.B.I. agents investigating the robbery. On June 2, 1975, two F.B.I. agents went to the house where defendant resided with her mother, Wilda Roberson, informed Mrs. Roberson they suspected defendant had been connected with the bank robbery, and asked for permission to search the premises. After conferring with her daughter, who said she did not object to the agents' request, Mrs. Roberson signed a written consent form allowing the officers to search. In the defendant's bedroom closet one agent found several plastic envelopes of pills concealed in packages of coffee and grits. Defendant was given the Miranda warning and questioned about the money found in her purse. She reportedly stated that the money had been acquired through the sale of drugs. Chemical analysis of some of the pills indicated that they contained codeine and other narcotics.

ASSIGNMENTS OF ERROR NOS. 1 and 3
These assignments relate to the denial of the defendant's motions to suppress the inculpatory statement and evidence seized in the search. While defendant does not contest the validity of the *216 consent to the search, she argues the agents did not have sufficient cause to request a search of her home or to question her. She bases her contentions primarily on our decisions in State v. Truss, 317 So.2d 177 (La.1975) and State v. Saia, 302 So.2d 869 (La.1974) wherein we stated that:
"* * * The police cannot approach citizens under circumstances that make it seem that some form of detention is imminent unless they have probable cause to arrest the individual or reasonable grounds to detain the individual under Terry v. Ohio [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]."
Our opinions in those cases pertained to actions by police in approaching or detaining defendants based on little more than the individuals' demeanor or gestures during street encounters.
The factual situation in the instant case is distinguishable both in character and degree from the street encounter cases. First, the F.B.I. agent did not detain the defendant or approach her under circumstances that made it seem some form of detention was imminent. Ms. Tornabene was not accosted in the street, but was questioned at her home. The evidence indicates she and her mother were free to deny the agents access to the house and to decline to talk to them. Second, the officers in this case acted upon evidence of illicit activity which we consider to be more substantial than the furtive movements or startled look relied upon by the police in Saia and Truss. In the present case, defendant's purse containing a large and unexplained quantity of cash, had been found in the vicinity of a recent bank robbery. Their suspicions justifiably aroused by this discovery, the agents acted properly in seeking an interview of the defendant and a voluntary search of her home.
The agents' suspicions fell short of probable cause to arrest or search, but the circumstances surrounding the discovery of defendant's purse furnished grounds for the officers to approach defendant at her home for consensual, non-custodial questioning and to request a search of her residence. The United States Supreme Court has recognized that:
"In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973).
The high court in Schneckloth also quoted with approval from People v. Michael, 45 Cal.2d 751, 290 P.2d 852 (1955), which held that it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes, if such inquiries are courteously made and not accompanied with any assertion of a right to enter or search or secure answers. We concur in this holding, but we also agree with the precautionary remarks of Justice Traynor in that case:
"We are not unmindful of the fact that the appearance of four officers at the door may be a disturbing experience, and that a request to enter made to a distraught or timid woman might under certain circumstances carry with it an implied assertion of authority that the occupant should not be expected to resist." Id., 290 P.2d at 854.
Furthermore, we reserve judgment on whether the F.B.I. agents could have approached Ms. Tornabene for any purpose on the basis of less substantial evidence of illicit activity than existed in this case. We conclude only that the agents in the present case acted properly and that the record indicates the evidence was voluntarily produced in response to a reasonable inquiry.
These assignments of error do not warrant reversal of the conviction and sentence.

ASSIGNMENT OF ERROR NO. 2
Defendant claims that the trial court erred in admitting into evidence, over her objection, the other narcotics seized with the codeine. Because these other drugs were controlled dangerous substances, possession of which is illegal, La.
*217 R.S. 40:961 ff., defendant argues that the introduction of this evidence constituted an improper reference to other crimes. However, the trial judge correctly ruled that the evidence was part of the res gestae, having been seized at the same time and from the same place as the codeine. La.R.S. 15:447-48; State v. Frazier, 283 So.2d 261 (La.1973); State v. Mays, 315 So.2d 766 (La.1975). The court further found that the evidence was relevant to show the defendant's intent to distribute, a constituent element of the crime with which she was charged. State v. Hamilton, 307 So.2d 329 (La.1975).
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 4 and 5
Defendant objected to the introduction of testimony on the street value and dosage units of codeine, and further claimed that if this testimony was to be admitted at all the State's expert witness was not qualified to give it.
The State argued that it was necessary to show that the over 600 codeine tablets which defendant had had in her possession were more than she would need for her personal consumption, in order to prove that she had possessed them with the intent to distribute. La.R.S. 15:441 provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
We find that the evidence was clearly relevant to the issue of intent and that it was a proper exercise of the trial court's discretion to admit it.
The court qualified Officer William Renton as an expert respecting the street usage of narcotics. Officer Renton had served in the Narcotics Division of the Jefferson Parish Sheriff's Office for four and a half years, during which time he had participated in over 500 narcotics arrests and had purchased drugs on the street in 150-200 cases. He had had considerable experience in working on the street as an undercover agent and had previously been qualified as an expert on the street usage of drugs in federal courts and in the Twenty-fourth Judicial District Court.
The officer admitted that he had not encountered codeine in this particular form before nor had he ever been qualified to render an opinion as to the use of codeine; and this was the basis of defendant's objection. However, the officer stated that he was familiar with the use of codeine, that he had purchased it on the street, and that he had previously testified as to the use of other opium derivatives similar to codeine. The trial judge felt that the limited questions put to the witness were within his expertise, and the lower court's decision as to the competency of an expert may not be disturbed in the absence of manifest error. State v. Richmond, 278 So.2d 17 (La.1973); State v. Thorson, 302 So.2d 578 (La.1974).
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 6
Finally, defendant argues that the trial judge erred in permitting the issue of guilt to go to the jury when the State had not proved that defendant knowingly possessed the codeine and when, to the contrary, Linda Redler, a defense witness, had testified to having placed the narcotics in defendant's room without her knowledge of it.
Defendant did not move for a directed verdict, and had she done so, the trial court would have been without the authority to grant it. By Acts 1975, No. 527, § 1, which went into effect shortly before the trial of this case, the Louisiana legislature amended La.C.Cr.P. art. 778 to provide for judgments of acquittal by the court in judge trials only; in a jury trial the evidence must go to the jury.
An essential element of the crime with which defendant was charged is that the possession be knowing or intentional. La.
*218 R.S. 40:967(A). However, La.R.S. 15:445 provides that intent need not be proven as a fact but "may be inferred from the circumstances of the transaction." Thus we conclude that there was ample evidence in the record from which the jury could have inferred that defendant's possession of the codeine was intentional.
Furthermore, the jury was not obliged to accept the exculpatory testimony offered by Linda Redler. This witness testified that one evening several weeks before defendant's arrest she made plans with the defendant to spend the night at her house. However, she stated that beforehand she went to the French Quarter where she met a man with whom she spent several hours, until at approximately 1:00 a. m. he gave her a ride to defendant's house. Once there, she said, he explained that he had nowhere to go and asked if he might come inside; she refused this request but agreed to hold the man's clothes for a day or two until he came to pick them up. Ms. Redler testified that he then gave her some articles of clothing and a sack containing a bag of coffee and a bag of grits. She stated that she placed these items in defendant's closet, unknown to defendant who was then asleep, and forgot to mention it until it was discovered that contraband was concealed in the bags. She claimed that the man had never contacted her again but that she had later learned from a newspaper that he was an escaped convict and that he had been killed by the police.
One of the primary functions of the jury is to weigh the often conflicting accounts presented to it and determine which are the more credible. In this case, the jury apparently rejected Linda Redler's testimony, as was its right, and accepted the evidence of guilt offered by the State.
This assignment is without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.