890 So.2d 689 (2004)
STATE of Louisiana, Appellee
v.
John Ira GRANT, Appellant.
No. 39,102-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*691 Louisiana Appellate Project by Kenota Pulliam Johnson, for Appellant.
Paul Joseph Carmouche, District Attorney, Tommy J. Johnson, Assistant District Attorney, Lea R. Hall, Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
DREW, J.
John Ira Grant was convicted at jury trial of possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute. He was subsequently adjudicated as a third felony offender and sentenced to life imprisonment without benefits. The defendant now appeals. We affirm in all respects.

FACTS
DEA Agent J.J. Silva testified that:
 in the late afternoon on February 25, 2002, he was driving an unmarked police unit, conducting rolling surveillance in the Cedar Grove area of Shreveport;
 he saw the defendant, driving a maroon Camaro, stop in front of a house on West 79th Street, exit the car, and walk around behind the house;
 the defendant returned, entering his car with an object in his hand;
 this behavior was consistent with someone picking up a delivery of drugs;
 he radioed the Shreveport Police Department for assistance;
 marked units with the patrol division responded;
 Officer Steve McKenna stopped the defendant after observing him fail to use a turn signal while making a left turn into a Shreveport apartment complex;
 McKenna searched the Camaro, finding a cell phone box, which he handed to Silva;
 the box contained 32 individual green Baggies of suspected cocaine;

*692  the maximum dollar value of the cocaine was approximately $4,760.00;
 he was familiar with the activities of drug addicts;
 the amount of cocaine recovered from the defendant was inconsistent with individual use;
 using this much cocaine would probably kill an individual; and
 addicts commonly don't have enough money to buy this much cocaine for personal use.
Officer Steve McKenna testified that:
 the defendant in court was John Ira Grant;
 McKenna made a traffic stop and made a consent search of the Camaro;
 when McKenna began to take Grant into custody, the defendant began struggling with the officers;
 after the struggle, Grant was arrested; and
 no money was recovered during the search of the defendant's car.
Mary Gay, an expert forensic chemist, testified that chemical analysis of the contents of the Baggies revealed 41.4 ounces of cocaine hydrochloride, "cut" with lidocaine.
The trial court accepted Officer Michael Tong as an expert on street-level narcotics investigation. Tong, supervisor of the Shreveport Police Department's mid-level narcotics unit, testified that:
 his unit focuses on persons capable of distributing an ounce or more of cocaine;
 users rarely keep more on their person than what they need at the time, which is usually a tenth of a gram, called a "dime bag," or ten dollars' worth;
 one dime bag contains one or two doses of cocaine;
 a user sometimes has three or four dime bags on him, which is about thirty or forty dollars' worth of cocaine;
 dealers usually buy cocaine in larger quantities, being known to keep quantities called "eight balls," which consist of an eighth of an ounce, or 3.5 grams;
 cocaine users usually have drug paraphernalia on their persons, which is used to consume cocaine, such as a straw, needle, or spoon;
 little green Baggies found with the cocaine are strictly used for distribution;
 the system of bagging used by the defendant appeared to be eight balls and did not appear to be broken down for personal use;
 the cocaine taken from defendant appeared to be in kilo form  "chunked" right off the kilogram of cocaine;
 based on the number of bags and method of bagging, the cocaine seized from the defendant was "overpoweringly" consistent with distribution of cocaine;
 an eight ball would produce 35 dime bags of cocaine, and the defendant had enough cocaine in his possession to make approximately 900 dime bags of cocaine;
 the street value of 47.6 grams of cocaine is forty-seven hundred dollars;
 this value was not consistent with how users purchase their cocaine, but it was consistent with how dealers purchase cocaine;
 the fact that no cash was found during the stop was no surprise to Officer Tong, as dealers usually spend their cash to purchase their "re-supply"; and

*693  dealers commonly keep their money separate from their drugs to avoid losing both if apprehended.
At the conclusion of the defendant's trial, a jury rendered a unanimous verdict of guilty as charged of the crime of possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute.
Following defendant's conviction as charged, the state filed a third felony habitual offender bill. Defendant was adjudicated as such. The trial court ordered a pre-sentence investigation report. Defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied.
At the defendant's sentencing on January 7, 2004, the trial court reviewed the defendant's prior criminal history, educational background, employment history, and family situation. The trial court noted that:
 the defendant had been adjudicated as a third felony habitual offender and that the two underlying convictions were crimes of violence;
 the pre-sentence investigation report reflected that the defendant was actually a fourth felony habitual offender;[1]
 the defendant's age was 34 years;
 in 1990, defendant was allowed to plead guilty to simple robbery after being originally charged with armed robbery, for which he received a suspended sentence;
 the defendant's second prior felony conviction in 1993 for aggravated burglary was committed while on probation for the first felony conviction, and as part of that plea bargain agreement, no habitual offender bill was filed;
 defendant had already benefitted from consideration given to him by our judicial system in each of the previous plea bargain agreements;
 the state had dismissed (for judicial economy) defendant's pending charges of attempted second degree murder;
 defendant had a lengthy prior criminal history; and
 defendant is not the exceptional person to whom the habitual offender law should not be applied.
Defendant was then sentenced to a term of life imprisonment without benefit of probation, parole or suspension of sentence.

DISCUSSION

I. Insufficient Evidence

The defendant does not dispute the fact that he had cocaine in his possession, instead arguing that:
 the evidence presented at trial failed to prove beyond a reasonable doubt that he intentionally possessed cocaine with the specific intent to distribute cocaine;
 the evidence failed to exclude every other reasonable hypothesis of innocence;
 the only evidence introduced to prove the defendant distributed cocaine was testimony that he had cocaine in his possession, which the defendant argues was for his personal use;

*694  no one observed him attempting to make a sale, nor was he found to be in possession of any paraphernalia generally seized during drug arrests;
 no scales, Baggies or excessive amount of money was found in the defendant's possession;[2] and
 his conviction should be reversed.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La. 10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
La. R.S. 40:967(A) states, in pertinent part:
[I]t shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II[.]
Cocaine is classified as a Schedule II drug under La. R.S. 40:964.
The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. La. R.S. 40:967(A). In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Since defendant did not contest the possession element, our review is limited to whether the state presented sufficient evidence to prove the intent element of the crime. State v. Smith, 30,614 (La.App.2d Cir.5/13/98), 713 So.2d 650.
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Elzie, 343 So.2d 712 (La.1977); State v. Johnson, supra.
*695 The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Smith, supra. Testimony of street value and dosage of the drug are also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976); State v. Smith, supra.
Here, expert testimony proved that the amount of cocaine and the manner in which it was carried was inconsistent with personal use. See, State v. Greenway, supra; State v. Johnson, supra. An application of four out of the five House factors supports the finding of this defendant's intent to distribute, the only factor missing being evidence of other sales. Viewing the evidence in the light most favorable to the prosecution, we find that intent to distribute was proven beyond a reasonable doubt.

II. Excessive Sentence

Defendant next argues that the sentence was excessive considering the facts of this particular case. Additionally, he contends that:
 the trial court erred in considering crimes for which the defendant had not been convicted;
 the trial court "suggested" that the defendant had been found guilty of armed robbery;[3] and
 the reference by the trial court to a fourth felony offense was improper, in that it was not made part of the record, nor was it tested by an habitual offender proceeding.
The state correctly responds that:
 no timely motion to reconsider sentence was filed of record in this matter, and therefore the review of the sentence is limited to the issue of excessiveness;
 the record reflects that the trial court considered many different factors and issues in sentencing the defendant; and
 the defense presented no evidence to justify a deviation from the mandatory life sentence in this case, which is presumed constitutional.
Because the trial court imposed the sentence prescribed by statute for an habitual offender adjudication, compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), cert. denied, Johnson v. Louisiana, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000). Furthermore, since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, supra.
*696 In this case, La. R.S. 15:529.1(A)(1)(b)(ii) mandates a life sentence without benefits for defendant, adjudicated as a third felony offender. His two prior underlying felonies (aggravated burglary and simple robbery) are listed as crimes of violence. La. R.S. 14:2(13)(v) and (y).
Although the supreme court stated in State v. Dorthey, 623 So.2d 1276 (La.1993) that courts have the power to declare a mandatory minimum sentence excessive under Art. I, § 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. (Citing Judge Plotkin's concurrence in State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.)
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof that the defendant committed the other offenses. State v. Jones, 31,569 (La.App.2d Cir.12/9/98), 724 So.2d 810.
Absent a defendant's assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant's criminal history, even when the dismissal forms part of the plea agreement. State v. Cook, 466 So.2d 40 (La.App. 2d Cir.1985).
Defendant has not met his burden of proving clearly and convincingly that he is an exceptional defendant, deserving of leniency. The trial court painstakingly set forth its reasons for determining that the defendant is not exceptional.
Defendant incorrectly contends that the trial court "suggested" that the defendant had been found guilty of armed robbery, an allegation not supported by this record. He also argues that the trial court erred in referring to the defendant as a fourth felony offender when he had not been adjudicated as such. However, the law clearly states that the trial court may properly review all prior criminal activity for sentencing purposes, including conviction records and dismissed charges. See, State v. Myles, supra; State v. Jackson, supra; and State v. Cook, supra. Defendant has led a life of crime, and this record amply supports his conviction and sentence.

DECREE
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The pre-sentence investigation report lists defendant's conviction of attempted possession of a firearm by a convicted felon by plea bargain on May 27, 1999, for which the defendant received a sentence of four years imprisonment at hard labor. The defendant was originally charged with possession of a firearm by a convicted felon. Also, the defendant's 2002 charge of possession of marijuana and his 2003 charge of attempted second degree murder were dismissed after the instant conviction and resulting sentence of life imprisonment.
[2] Officer McKenna could not recall finding any Baggies, though other witnesses did.
[3] A reading of the sentencing transcript clearly shows that the trial court repeatedly mentioned that the defendant was originally charged with armed robbery, but was allowed to plead guilty to simple robbery. The trial court never suggested that the defendant was convicted of armed robbery.