920 So.2d 334 (2006)
STATE of Louisiana, Appellee
v.
Ted W. MOORE, Appellant.
No. 40,311-KA.
Court of Appeal of Louisiana, Second Circuit.
January 13, 2006.
*338 Peggy Sullivan, Louisiana Appellate Project, for Appellant.
Ted W. Moore, Pro Se.
Jerry Jones, District Attorney, R. Nicholas Anderson, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
CARAWAY, J.
The defendant was convicted by a jury of possession of cocaine with intent to distribute and sentenced to 20 years at hard labor with at least two years of the sentence to be served without benefits. Defendant appeals the conviction, asserting inter alia that his waiver of the right to appointed counsel was deficient.

Facts
On July 17, 2003, a parole officer, Diane Walker, was making field calls and looking for Rhonda Hurd, a parolee whom Walker supervised. Walker knew that Hurd sometimes stayed at the home of Ted W. Moore, the defendant, which was prohibited under the conditions of Hurd's parole. On July 17, Walker learned that Hurd was at Moore's residence. Walker then contacted Moore's parole officer, Alexis Hopper, and the two, along with other parole officers, went to Moore's house where they confronted Moore, Hurd, and others. After observing Moore walk out of one of the rear bedrooms with his hands in his pockets, the officers suspected he was in possession of either a weapon or contraband. Moore was searched, and he was found in possession of what appeared to be crack cocaine. The crime lab report confirmed that the contraband seized as evidence tested positive as cocaine.
At a pre-trial hearing on a motion to suppress, the defendant's request for different appointed counsel was denied by the trial court. The motion was tried with his appointed counsel. Subsequently, on the day of trial, Moore's appointed lawyer advised the trial court that Moore wanted to represent himself, and that Moore had threatened both him and the prosecutor. Counsel then asked to be relieved of the representation. When the trial court questioned defendant about self-representation, Moore answered affirmatively that he wanted to represent himself. The trial court asked about his level of education before permitting him to proceed to trial the same afternoon. The record reflects *339 that the defendant had represented himself in an earlier proceeding with the same judge some years before. The defendant was convicted of the charged offense and sentenced to 20 years at hard labor with 2 years to be served without benefits.

Discussion
Moore first argues that the evidence does not support the conviction of possession of cocaine with the intent to distribute. While appellant does not deny possessing the cocaine, he argues that the state failed to prove beyond a reasonable doubt that he did so with intent to distribute because he claims the state's expert testimony regarding cocaine use and distribution did not establish that element of the crime. Moore also argues that the expert did not address the possibility "that a user in their own home might not feel compelled to have a crack pipe on his person and the State never made their `expert' aware of the evidence found in the house that someone was smoking." Finally, Moore notes that Rhonda Hurd admitted to use of cocaine and testified at trial that their joint use of the 27 rocks of cocaine found at the residence could have occurred over a short period of time.
It is unlawful for any person to knowingly or intentionally produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II. La. R.S. 40:967. To convict a defendant of possession of CDS with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967; State v. Clark, 35,272 (La.App.2d Cir.12/5/01), 803 So.2d 280.
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Grant, 39,102 (La.App.2d Cir.12/15/04), 890 So.2d 689; State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201, writ denied, State ex rel. Johnson v. State, 03-3546 (La.12/17/04), 888 So.2d 854. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Johnson, supra.
The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Clark, supra. Testimony of street value and dosage of the drug is also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La. 1976); State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. *340 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-282 (La.6/26/98), 719 So.2d 1048.
During the search of Moore's house conducted by the parole and probation officers, Officer Walker asked Officer O'Neal to search the defendant because she thought he had a weapon. The defendant had in his possession 27 rocks of crack cocaine. Eleven of the rocks were packaged together in a plastic bag, and the other 16 were in a plastic bottle.
The state's expert witness, Mark Johnson, testified that possessing such a large amount of crack cocaine with no crack pipe found on the defendant's person was absolutely consistent with street level distribution of crack cocaine. He stated that the rocks were "cut up and ready for sale judging by their size and consistency." He estimated the street value to be $600 to $700. Johnson further testified that typical crack users "hardly ever run around with anything more than what they can smoke," and that most users carry no more than one or two rocks. Further, crack users usually carry their crack pipes with them. There was no evidence presented by the state or the defense concerning the existence of crack pipes at the residence.
From our review of the expert testimony regarding the cocaine in Moore's possession, we find that the circumstantial evidence establishes beyond a reasonable doubt the intent to distribute cocaine. Therefore, this assignment is without merit.
In his next assignments, Moore argues that the trial court did not make an appropriate inquiry prior to allowing him to represent himself at trial, and that he only requested that a different attorney be appointed. Alternatively, he argues that the trial court should have continued the trial to allow him more time to prepare to act as his own counsel.
*341 U.S. Constitutional Amendments VI and XIV, as well as Louisiana Constitution article I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. White, 325 So.2d 584 (La.1976); State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718. The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La.1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta v. California, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, supra, citing Adams v. United States, ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04) 871 So.2d 347; State v. Flanagan, supra. The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.
The adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir.1991), writ denied, 600 So.2d 634 (La.1992); State v. Held, 32,610 (La.App.2d Cir.12/10/99), 748 So.2d 608. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. Strain, 585 So.2d 540 (La.1991); State v. Drumgole, 31,294 (La. App.2d Cir.10/28/98), 721 So.2d 956. In State v. Strain, supra, the Louisiana Supreme Court stated:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.
Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Strain, supra.
In State v. Seiss, 428 So.2d 444 (La. 1983), the Louisiana Supreme Court held that absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance. Once the trial date has arrived, the question of withdrawal of counsel rests with the discretion of the trial *342 court, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. Id. at 447.
The grant of continuance is discretionary with the trial court. La. C. Cr. P. art. 712; State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218. The denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. State v. Shaw, 27,892 (La. App.2d Cir.4/3/96), 672 So.2d 237. The defendant in a criminal trial may not, by a last minute change of counsel, force a postponement. State v. Leggett, 363 So.2d 434 (La. 1978); State v. Anthony, 347 So.2d 483 (La.1977); State v. Willis, 36,198 (La. App.2d Cir.8/14/02), 823 So.2d 1072, writ denied, 03-919 (La.4/8/04), 870 So.2d 262. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, supra; State v. Anthony, supra; State v. Hegwood, supra.
The trial court's denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. See State v. Seiss, supra, and State v. Martin, 93-285 (La.10/17/94), 645 So.2d 190, wherein the Supreme Court of Louisiana stated that even if it would have been prudent for the trial judge to have granted a continuance, the denial of the motion was not an abuse of the trial judge's wide discretion.
An extended colloquy between the trial court, defendant and his appointed counsel, Mr. Nolen, occurred on the morning of the day that trial was to begin. Nolen began by advising the court that Moore "desires to represent himself." Counsel further advised the court of conflicts he had experienced with Moore, of Moore's belief that Nolen had not adequately represented him, and of threats Nolen had received from Moore. Nolen asked to be relieved as counsel. Before Moore was allowed to address the court, the trial court first reviewed the record and the court also briefly discussed its recollection of the state's prior plea offer of eight years. The plea offer was one of the sources of dispute between Moore and Nolen, since Moore asserted that Nolen never presented the plea offer to him. The trial court then determined from the state that the plea offer did not remain available.
The trial court next addressed Moore's concern regarding Nolen's alleged failure to subpoena witnesses. This also occurred before Moore was allowed to address the court concerning self-representation. Following a lengthy discussion, including Nolen's explanation of his efforts in obtaining the witnesses and the trial court's issuance of certain instanter subpoenas, the record reflects the trial court's determination that the available witnesses which Moore desired for his defense would appear at trial.
The trial court then, for the first time, addressed Moore's request for self-representation, as previously advised by Nolen, with the following:
By The Court: ... You know from observing you I don't think you're capable of doing a good job handling this case yourself. Just about any lawyer green and right out of school is better able to handle a trial like this than you are, based upon my observations of you, sir. And I've received a number of correspondences from you including at least three petitions of Writ of Habeas Corpus which I think are totally misguided and without merit. And the Court has so found. You don't seem to have a particularly good understanding of how this stuff works.

*343 And I'm not inclined to allow you to represent yourself. Because I think you're going to hurt yourself if you do. But, I'll listen to you. You still maintain that you want to represent yourself?
By Mr. Moore: Yes sir....
At that point, Moore then returned to expressing his disgruntlement about Nolen's representation. Thereafter, the trial court continued to review Nolen's claim for self-representation, as follows:
By The Court: How much education do you have Mr. Moore?
By Mr. Moore: I stopped in the 12th Grade.
By The Court: Um-Huh. And what experience do you have if you think it qualifies you to present a defense at a trial?
By Mr. Moore: Sir, I know this right here. I know that Mr. Nolen, Mr., Mr. Anderson and you, sir, yourself, all three of y'all is in cahoots to have me railroaded. That I know. And I know that I would have a better chance doing this here myself than to just let y'all do it any kind of way y'all want to do it, sir.
* * * * *
By Mr. Moore: Mr. Nolen is not representing me, sir. He is representing the prosecution. He ain't trying to help me, sir.
By The Court: Let me tell you what. You're making a big mistake, sir. But, I'm going to grant Mr. Nolen's motion to be relieved as counsel. You're on your own. You're going to trial at 1:30. Have a seat.
Following a brief discussion during which Nolen obtained a copy of the transcript of the preliminary examination and other information from Nolen's file, the trial court stated:
By The Court: Do you understand, sir that we're going to start first with jury selection. It will be tomorrow morning before we start any evidence?
By Mr. Moore: No, sir. I don't understanding that, but I'm just asking for time to look over my case. I asked for time to get another lawyer. If I can't get time, then I will take it up on myself to be my own lawyer.
By The Court: I'm not granting any additional time.
Following the noon recess, the trial court first took additional time to advise Moore of the voir dire process which was about to occur. At one point in that discussion, the following exchange occurred:
By Mr. Moore: Sir, I was wandering (sic), could I have-if there was a lawyer that was not busy, could I, could I like have one to like, to like ask questions when I need it? Any lawyer except Mr. Nolen, sir.
By The Court: Well, let me say this to you, sir. Mr. Nolen has been discharged. You are an indigent defendant. And the-having discharged your lawyer, you're on your own. I'm kind enough to give you some information now to help you through this process. I told you it was unwise to do what you were doing, discharging your lawyer, But, I-nevertheless, I'm going to try to give you some guidance on how to handle this matter, so you can perhaps get through it....
As the discussion concerning the trial process then continued, Moore initiated an inquiry of the court concerning the use of hearsay evidence, which was then explained briefly by the court. Finally, before the first prospective members of the jury were called for examination, the assistant *344 district attorney, Mr. Anderson, began the following discussion:
By Mr. Anderson: Also, I think I heard Mr. Moore stated at one point, that he had represented himself in another trial. And inquire as to-if that is in fact the case. Just so the knowing, just as a further-a factor in his knowing waiver of counsel in this matter.
By The Court: I don't recall.
By Mr. Anderson: Unless you've already said it.
By The Court: I don't recall. Did you-did you represent yourself in another trial, sir?
By Mr. Moore: Up under you, sir.
By The Court: Uh-huh. I seem to have a vague memory of that. But, understanding something. I've been around a long time. And the outcome of that case I assume was that you were not successful?
By Mr. Moore: Because you wouldn't let my evidence in, that's why.
By The Court: Yes. The court is not going to let any evidence that's not proper evidence, sir, whether you're the lawyer working for yourself or another lawyer is on that side or you're talking about the prosecutor. But, I do remember vaguely the trial sometime ago. And as I recall, you did-as I recall you did act alright during the course of the trial. And you're required to do so. Alright, anything else?
We have reviewed above the entirety of the multiple exchanges that occurred between the trial court and the defendant pertaining to his waiver of the right to counsel and his review of the trial process that was about to commence with voir dire. The court took extensive time determining whether defendant possessed at least some simple understanding of the trial process to insure that the grave implications of his waiver of counsel were within his understanding. Before the defendant was allowed to begin the voir dire process:
 the trial court advised Moore of the benefits of a trained lawyer;
 the trial court advised Moore that his prior pro se pleadings in the case evidence no ability to provide himself a defense;
 the trial court inquired regarding Moore's education and was able to gauge his mental condition and understanding for his choice of self-representation; and
 the trial court reminded defendant of the fact of his failed self-representation in the prior case.
The one warning which the trial court did not specifically give the defendant concerned the maximum sentence exposure he faced. Nevertheless, early in the colloquy, a discussion of the state's withdrawal of an eight-year plea bargain offer occurred. This clearly shows that at the time of his waiver, Moore understood that he was facing over eight years. He knew he faced a major felony, with major exposure to incarceration. In fact, Moore's prior trial, which was later called to the trial court's attention, involved the same drug distribution crime as the present charge. State v. Moore, 29,212 (La.App.2d Cir.1/22/97), 687 So.2d 647. Moreover, as the reported decision reveals, Moore elected self-representation in that case and raised unsuccessfully the same issue of improper waiver of counsel before this court.
While the trial court's colloquy with Moore concerning self-representation could have been more focused and should have specified the maximum sentence, the understanding of the risks of self-representation *345 and the voluntariness of his waiver are "determined in terms of the entire record and not just by certain magic words." State v. Strain, supra at 543. Under these unique circumstances, by the time trial was allowed to commence, the trial court had obtained a thorough understanding of Moore's ability to make the choice of self-representation and could accept his waiver of counsel. We therefore reject the argument that an invalid waiver of counsel occurred.
Additionally, the trial court's review of the self-representation issue was made after it had determined that the defense witnesses would be present for trial and that no continuance of the trial was necessary. At the time defendant expressed his desire to waive counsel, he understood that the trial was to begin that day regardless of his choice for representation. The defense witnesses were those persons present with the defendant at the time of his arrest, and therefore the confrontation of those witnesses regarding the arrest involved facts within the defendant's knowledge. The request of a continuance for additional preparation was therefore unwarranted and only evidences an attempt at delay. The trial court, therefore, properly exercised its discretion in denying the continuation.
Finally, appellant argues that the sentence imposed is excessive under the facts and circumstances of this case.
Any person convicted of distribution, dispensing, or possession with intent to produce, manufacture, distribute, or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) of La. R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than 2 years nor more than 30 years, with the first 2 years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than $50,000. La. R.S. 40:967(B)(4)(6).
When a defendant fails to file a La. C. Cr. P. art. 881.1 motion to reconsider sentence the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, 04-597 (La. 9/24/04), 882 So.2d 1165.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior *346 criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-705 (La.9/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
Moore's undisputed extensive criminal history was adequate to consider as a factor during sentencing. A review of the record shows that the trial court sentenced the defendant to 20 years and specified that 2 years be served without benefits as the statute requires. The sentence is therefore within statutory limits and not constitutionally excessive. This assignment is without merit.
For the above reasons, the defendant's conviction and sentence are AFFIRMED.