MOORE, J.
The defendant, Reginald Anthony Saulsberry, agreed to plead guilty to a charge of simple burglary and as a second felony offender in exchange for a 13-year sentence with credit for time served. Saulsberry also reserved his right to appeal the trial court's denial of his motion to dismiss his counsel and motion for a continuance in order to obtain new counsel. This appeal arises from these rulings. After review, we find no error in the trial court's rulings, and, therefore, we affirm Saulsberry's conviction and sentence.
FACTS
Saulsberry was charged by bill of information with the simple burglary of Fuqua Paper Supply Company ("Fuqua") in Ruston, Louisiana. Fuqua is a distributor of paper, plastics and food service disposables as well as janitorial supplies and cleaning equipment. Saulsberry was a former warehouse employee of Fuqua discharged several weeks prior to the burglary. Police found his fingerprints on a box that had been removed from a pallet of 10 vacuum cleaners and then left on the floor by the burglar; at least three vacuum cleaners in boxes were missing from the pallet. Since the vacuum cleaners were received at the warehouse after Saulsberry was fired, his fingerprints should not have been on the box. This evidence led to Saulsberry's arrest for burglary.
On May 29, 2015, Saulsberry was charged by bill of information, and attorney James Wilkerson from the Indigent Defender Board was appointed to represent him.
On Monday, September 28, 2016, the morning that trial was to begin, Saulsberry made a request or motion to the trial judge to remove and replace his court-appointed counsel. When the court asked the defendant why he did not bring the matter up the previous Friday when he was present in the courtroom, Saulsberry said that Wilkerson stopped him short of the podium and told him that "I was third for trial, I wouldn't go to trial until next year." However, a few minutes later, a bailiff informed him that he needed to "dress out for Monday." Saulsberry told the court that "all they been doing is lying to me ever since I had it."
*1139 The trial court swore in the attorney, Wilkerson, for questioning. Wilkerson testified that, during his representation in this matter, he had met with Saulsberry between 10 and 20 times; however, those visits were mostly unproductive because Saulsberry usually became angry and left the meetings. He further said that Saulsberry accused him of being dishonest and "in with John Belton [the district attorney] and Lewis Jones [the ADA prosecuting his case] to drive up their conviction rates." Wilkerson could not recall the details or specifics of Saulsberry's several accusations of wrongdoing. He said that Saulsberry did file a complaint with disciplinary counsel of the bar association. That complaint, he said, was dismissed.
Additionally, Wilkerson told the court that Saulsberry had previously complained to the court regarding his refusal to adopt two pro se motions-motion to suppress and motion for a bill of particulars. The trial judge did not recall any specific complaints by Saulsberry, but he remembered that he dismissed the motions. Wilkerson also said that Saulsberry was concerned that he (Wilkerson) did not directly ask the victim, Fuqua, for some paperwork; instead, he made this request to the ADA, Lewis Jones. He said he told Saulsberry that it was better that way, explaining to him that if the state withheld exculpatory evidence it would result in the case having to be retried. He said that the defendant then "blew up" over the matter.
Finally, Wilkerson recounted an incident to the court that occurred on the day before trial regarding whether he would obtain a subpoena for a witness named Channing Rushing. According to Wilkerson, Rushing had evaded being located and had avoided talking to him ever since the burglary occurred. However, he was finally able to speak with Rushing by telephone the day before trial. After a lengthy telephone conversation with Rushing, he concluded that Rushing's testimony would not benefit the defendant. He discussed the matter with Saulsberry, and it was his understanding that Saulsberry agreed it would not help to subpoena Rushing, which account Saulsberry now denied. Wilkerson said that Saulsberry may have said that there was no point in his obtaining a subpoena because he (Wilkerson) would not be representing him.
The court questioned Saulsberry, who said that Wilkerson met with him "ten times maybe." He characterized the meetings as "unproductive" because Wilkerson "was constantly lying to me." When asked for specifics, Saulsberry noted the incident on the previous Friday when Wilkerson told him that his trial was third on the court's docket. The court confirmed that the case was third on the docket, but Saulsberry charged that Wilkerson lied when he said he would not go to trial until next year.
Saulsberry also stated that he became angry and cut the meetings short because Wilkerson did not do anything for him: he failed to request documents directly from Fuqua, and instead requested them from the DA's office; he asked Saulsberry's girlfriend to stop attempting to obtain evidence from Fuqua Paper; and he asked the wrong questions to Channing Rushing, a witness that Saulsberry wanted to call in his defense.
Wilkerson stated that he had completed discovery and was prepared to proceed to trial. Saulsberry requested a continuance to allow him the opportunity to retain new counsel, stating that he had never trusted Wilkerson as his trial counsel. The state argued that Saulsberry's request for a continuance to find new counsel was untimely, as it was raised only on the morning of trial.
*1140 The trial court denied the motion to continue the trial. The court noted that attorney Wilkerson had been diligent in his duties, had extensive criminal trial experience, having tried more than 10 criminal jury trials, and that Saulsberry waited until the last moment to voice his concerns, despite ample opportunity to do so earlier. The trial court also noted that Saulberry's complaint against Wilkerson, filed with the Office of Disciplinary Counsel, had been dismissed.
Saulsberry then agreed to plead guilty to simple burglary and as a second-felony habitual offender, with an agreed-upon sentence of 13 years at hard labor. The state also agreed to dismiss two additional separate charges of simple burglary. Under the terms of the plea agreement, Saulsberry reserved his right to appeal the denials of his motion to terminate counsel and motion to continue. After Saulsberry pled guilty to the charge of simple burglary, the state filed a habitual offender bill of information charging Saulsberry as a second-felony habitual offender. Saulsberry pled guilty as charged and was sentenced to 13 years' imprisonment at hard labor. This appeal followed.
DISCUSSION
Both assignments of error are essentially intertwined and will be treated together. By his first assignment of error, Saulsberry alleges that the trial court erred in failing to either appoint different counsel or allow him additional time to hire counsel, when it was clear that attorney Wilkerson could not be effective given the communication issues and distrust exhibited by him. In his second assignment, Saulsberry alleges that the trial court erred in failing to grant the continuance he requested in order to facilitate the opportunity to retain counsel of his choice.
Saulsberry maintains that his lack of confidence in his court-appointed trial counsel deprived him of his constitutional right to effective counsel. He argues that he did not bring his concerns to the trial court's attention prior to the morning of September 28, 2016, because he did not believe that he would be proceeding to trial on that date, as he relied on statements by Wilkerson regarding his resignation from the Public Defender's Office to conclude that he would be assigned a different attorney prior to trial. Saulsberry argues that Wilkerson lied to him about the trial setting, failed to request documents from the victim, and failed to subpoena a witness, in support of his claim that the trial court should have continued the trial so he could retain different counsel with whom he could effectively communicate.
The state argues that Saulsberry has not shown that his trial counsel was ineffective in his representation or that the trial court should have granted a continuance. Saulsberry had ample opportunity, nearly 16 months, to retain his own attorney prior to trial, but he failed to do so or request that new counsel be appointed until the morning of trial. The state argues that this request was untimely and that Saulsberry has made no showing of specific prejudice as a result of the trial court's denial of his request.
Upon a written motion at any time and after a contradictory hearing, the trial court may grant a continuance, but only upon a showing that such a motion is in the interest of justice. La. C. Cr. P. art. 707 ; State v. Thomas , 51,346 (La. App. 2 Cir. 6/21/17), 223 So.3d 759 ; State v. Harris , 44,402 (La. App. 2 Cir. 6/24/09), 20 So.3d 1121, writ denied , 09-2303 (La. 4/23/10), 34 So.3d 271. Additionally, the court has discretion to grant a timely filed motion for a continuance "in any case if *1141 there is good ground therefor." La. C. Cr. P. art. 712. Because the decision to grant or deny a motion for continuance rests within the sound discretion of the trial court, a reviewing court will not disturb the trial court's determination absent a clear abuse of discretion. State v. Thomas, supra ; State v. Free , 48,260 (La. App. 2 Cir. 11/20/13), 127 So.3d 956, writ denied , 13-2978 (La. 5/30/14), 140 So.3d 1174. Generally, a reviewing court will not reverse a conviction even on a showing of an improper denial of a motion for a continuance, absent a showing of specific prejudice. State v. Free, supra .
The Sixth Amendment to the U.S. Constitution, as well as La. Const. art. I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ; State v. Carpenter , 390 So.2d 1296 (La. 1980) ; State v. Shumaker , 40,275 (La. App. 2 Cir. 10/28/05), 914 So.2d 1156.
Generally speaking, a person accused in a criminal trial has the right to counsel of his choice. La. Const. art. I, § 13 ; State v. Leggett , 363 So.2d 434 (La. 1978) ; State v. Anthony , 347 So.2d 483 (La. 1977). The defendant in a criminal trial may not, however, by a last-minute change of counsel, force a postponement. State v. Moore , 40,311 (La. App. 2 Cir. 1/13/06), 920 So.2d 334, writ denied , 06-2267 (La. 6/1/07), 957 So.2d 167 ; State v. Leggett, supra ; State v. Anthony, supra . The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when the defendant is dissatisfied with his present attorney, but had ample opportunity to retain private counsel. State v. Moore, supra ; State v. Leggett, supra ; State v. Anthony, supra .
We conclude that Saulsberry failed to exercise his right to retain counsel of his choice at a reasonable time prior to trial. While a defendant is entitled to the counsel of his choice, he may not force a continuance of trial by a last-minute change of counsel. In this instance, the matter was set for jury trial on September 26, 2016, and was called for trial two days later. His appointed counsel clearly stated that he was present and prepared to proceed with trial on September 28, 2016. Only then did Saulsberry request that the trial court remove court-appointed counsel. At no time prior to that did Saulsberry request a new attorney or voice his concerns to the trial court, despite having almost 16 months to do so.
Saulsberry asserts that he was unable to effectively communicate with Wilkerson "based on his trepidations about the nature of the relationship." However, the record reflects that the communication issues stemmed from Saulsberry's unwillingness to take the advice of counsel. Wilkerson visited with Saulsberry between 10 and 20 times to prepare a case. Saulsberry was displeased that he chose to obtain evidence from the state through discovery, rather than directly from Fuqua, and that he chose not to subpoena a witness whose testimony would have been detrimental to Saulsberry's defense. These actions were entirely appropriate. Furthermore, Saulsberry's assertion that Wilkerson continually lied to him is unsupported by any evidence.
The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when the defendant is dissatisfied with his present attorney, but had ample opportunity to retain private counsel. The trial court did not abuse its discretion in denying Saulsberry's *1142 request for a continuance so that he could retain new counsel.
Accordingly, these assignments of error lack merit.
CONCLUSION
Having found no abuse of discretion by the trial court in denying the defendant's motions to remove counsel and continue trial until the defendant could obtain new counsel, we affirm the judgment of the trial court and the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.