803 So.2d 280 (2001)
STATE of Louisiana, Appellee,
v.
Aaron Joseph CLARK, Appellant.
No. 35,272-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*283 Wilson Rambo, Counsel for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, Tammy Lee Gantt, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, CARAWAY and DREW, JJ.
DREW, J.
Found guilty as charged by an 11-1 jury vote, Aaron Joseph Clark appeals his conviction on one count of possession of *284 "methamphetamine or amphetamine" with intent to distribute. Trial testimony from a forensic chemist established the CDS at issue was, in fact, amphetamine. The trial court imposed a sentence of 15 years at hard labor and denied a timely motion for reconsideration of sentence. Defendant argues that the evidence is insufficient to support the finding of guilt beyond a reasonable doubt because there was no proof defendant intended to distribute the CDS. Defendant also complains that a mistrial should have been granted when a witness allegedly referred to "other crimes evidence." Finally, defendant urges that the sentence is excessive. We affirm the conviction and the sentence.

TESTIMONY
Bienville Parish Sheriff's Deputy Brandon Huckaby testified in detail about his reasons for stopping the car in which the defendant was a passenger. Driving a marked patrol car in the early morning hours of July 29, 1998, Huckaby traveled westbound about 25 mph on Highway 154 from Jamestown into Ringgold. An off-duty dispatcher, Danny Ferguson, accompanied Huckaby in the patrol car. When he came around a curve, Huckaby observed a car at the intersection of La. Highway 4 and La. Highway 154. The officer became suspicious because the car stayed at a stop sign for a long period of time and there was no traffic. Huckaby slowed his vehicle and continued to watch through his rear view mirror. The car pulled into the traffic lane on Highway 154 behind Huckaby, but continued to fall further behind the deputy even though Huckaby was driving only about 25 mph in a 45 mph speed zone. Huckaby watched the car turn into a "residence neighborhood" which made him more suspicious the occupants might be up to no good. The residential area was small and both officers were familiar with the residents and their vehicles. The car they observed did not belong to a resident.
The officer drove onto Highway 371, the main north/south thoroughfare in Ringgold and parked at a gas station to watch for the car as it emerged from the other outlet from the small residential area. The car halted at the stop sign at the intersection of the side street with Highway 371, then turned left onto 371 without using a turn signal (in violation of La. R.S. 32:104). The car made an immediate right turn off of Highway 371 onto Hall Street, again using no turn signal. Huckaby pulled in behind the car and activated his roof lights. After some 200 yards, the suspect car pulled into a driveway and stopped.[1]
The passenger in the rear seat was the defendant (aka "Cat") who rapidly exited the vehicle from the right side. Defendant, with something in his left hand, began to walk quickly toward the house, then dropped the object. Huckaby told defendant to stop. When the defendant hesitated, the deputy again commanded defendant to stop and approach the police car. The defendant complied. Huckaby never lost sight of the object on the ground.
The driver also exited the car. Huckaby had the driver and the defendant step back to the front of the patrol car and then got the other passenger out of the vehicle. Defendant had been riding with two brothers, Tommy Philyaw, the driver, and Mark Philyaw, the front seat passenger.
After securing the occupants of the car, Deputy Huckaby picked up the object defendant had dropped, a change purse. *285 Huckaby opened it and saw it contained what the deputy believed to be a CDS. He put the defendant and one other into handcuffs and called for backup. Deputy Ricky Bridges, the on-call narcotics officer, responded to the scene, and field tested the suspected CDS which was positive. Bridges later transported it to the North Louisiana Criminalistics Laboratory in Shreveport. When back up arrived, Huckaby obtained another set of handcuffs for the third person. Huckaby informed everyone of their rights. They all denied ownership of the purse and its contents. At trial, Huckaby looked at the coin purse and stated its contents were in the same condition as when he found the purse which contained four bags with a white substance. Huckaby also testified that he found a hand gun when he looked into the rear passenger compartment.
Ricky Bridges, narcotics officer with the Bienville Parish Sheriff's Department when this offense occurred, testified that he was called by Deputy Huckaby to conduct a field test. He also explained the chain of custody on the coin purse and its contents. The coin purse contained four plastic bags, each of which contained CDS.
Kevin Batts, a forensic chemist at the North Louisiana Criminalistics Laboratory, testified about chain of custody and testing procedures. He analyzed the evidence in this case. There is very little chemical difference between methamphetamine and amphetamine. He concluded the substance in this case actually was amphetamine. James Daniel Ferguson, a dispatcher for the Bienville Parish Sheriffs Department, testified that he rode with Deputy Huckaby on the night in question and described the events leading up to the traffic stop. When the car stopped, the back door opened and the defendant got out of the back seat "kind of hurriedly". He walked toward the house and dropped something from his left hand. Huckaby had to tell him twice to stop and come back to the police car. Later, Huckaby picked up the dropped object which was in the same condition as when it was dropped.
Mark Philyaw testified that he was convicted in 1980 for accessory after the fact to armed robbery and accessory after the fact to theft. He also had convictions for DWI and simple battery. On July 29, 1998, his brother Tommy, drove and Mark was his passenger. They went to defendant's home to get some money from him. They picked up defendant at his home and were taking defendant to Tonya's house for the defendant "to sell some drugs" and give the money to Tommy. Mark testified that Tommy was unemployed at that time and made a living by selling drugs for Bud Cole and collecting money for him from other people. Mark stated that the coin purse and some of the CDS belonged to Tommy and that he had seen the defendant with the white baggie. When the police got behind their vehicle, Tommy handed the coin purse to Mark who gave it to the defendant in the back seat. Mark denied telling persons on an earlier occasion that he was the person who threw the drugs from the vehicle.
Tommy Philyaw testified that at trial he was serving a 45-year Texas sentence. Tommy admitted he had previous convictions for simple robbery, burglary, arson, forgery, and aggravated sexual assault. Tommy told the jury that at the time of the instant offense he was dealing methamphetamine ("meth") and picking up money for Bud Cole, a Texas resident. Tommy had gone to defendant's house "to pick up money."
Without objection, Tommy stated that the men were going to the house so defendant could sell some drugs. During the drive, defendant was giving directions because *286 the Philyaw brothers didn't know where to go. Tommy had a large rock of meth in the coin purse with him that night. He said the rock broke into two pieces. When the men saw the police car, Tommy threw his meth to Mark. Mark gave the pouch to defendant, so he could add his meth to it and get rid of it. The plan was to put all the drugs in the purse and get rid of it, but the police car was too close. According to the witness, meth is usually cut down to one-ounce or half-ounce size for sale. The blue bags contained half grams for sale.
Testifying for the defense, Keith Mondello stated that defendant lived at his house on the date in question. When the Philyaw brothers arrived, defendant asked them for a ride "to a girl's house". Mondello wasn't aware of the defendant possessing any drugs.
Ginger Keith testified that Mark Philyaw told her the defendant didn't know anything about the CDS in this case. Tommy gave it to Mark who had thrown it out of the car. Her husband, Audie Keith, testified that Mark told him that Tommy gave the drugs to Mark who threw it under the car. Keith stated the defendant did not know anything about it.

DISCUSSION
On appeal, the defendant argues that there was insufficient evidence to support his conviction and that the trial court should have granted a new trial.[2] Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273. To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967; State v. Smith, 94-1502 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1081. Five factors have been identified as useful in determining whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance. The factors are set forth in State v. Hearold, 603 So.2d 731 (La. 1992):(1) whether the defendant ever distributed or attempted to distribute the CDS; (2) whether the drug was in a form *287 usually associated with possession for distribution to others; (3) whether the amount of the drug creates an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Defendant argues that his motion for new trial should have been granted under the authority of La. C. Cr. P. art. 851 because the evidence was insufficient to prove his intent to distribute. He contends the evidence showed only that the Philyaw brothers owned the CDS, they were taking it to Tonya's house, and that the passenger threw the CDS to defendant when the police got behind the car. Citing State v. Murray, 375 So.2d 80, 88 (La. 1979), defendant also complains that the state relies on the uncorroborated testimony of purported accomplices. In Murray, supra, the court noted that such statements must be treated with great caution. A cautionary instruction is not needed where there is "material corroboration of the accomplice's testimony." There was ample material corroboration here, and in any event, no cautionary instruction was ever requested.
Both police officers saw defendant possess the purse which contained the CDS. It was packaged in four separate plastic bags. One bag was clear and contained two large rocks of CDS. The other three bags were blue and contained one-half gram of CDS, which is a quantity commonly used in the sale of methamphetamine and amphetamine. Tommy Philyaw said that the CDS had been cut into smaller quantities to be affordable for sales, and that defendant asked them (the Philyaw brothers, Tommy and Mark) for a ride to Tonya's house for the purpose of selling her some drugs.
Huckaby and Ferguson saw defendant drop a coin purse which was found to contain four baggies of amphetamine. Three of the baggies contained one-half ounce of the CDS, a quantity commonly used in the trafficking of this drug. Tommy Philyaw testified the three small bags belonged to defendant while the bag containing the large rocks belonged to Tommy. The Philyaws' statements that defendant directed the men to Tonya's house was corroborated by the officers observing the vehicle sitting at a stop sign for a lengthy period of time and driving slowly. The facts established by the direct evidence and inferred from the circumstantial evidence were sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant knowingly and intentionally possessed the amphetamine and that he did so with the intent to distribute it.
Defendant asserts the trial court erred in refusing to grant a mistrial, first when Mark Philyaw testified about his brother's (Tommy) drug dealing and collecting money for another drug dealer and later when Tommy testified that he had gone to defendant's house to pick up some money. Defendant maintains these were oblique references to crimes committed by defendant. According to the prosecution, neither testimony implicated defendant in any criminal activity, but only showed that Tommy, the driver, was a drug dealer and was going to defendant's house.
La. C. Cr. P. art. 770 provides for the grant of a mistrial when a remark made by a court official refers to another crime alleged to have been committed by the defendant as to which evidence is not admissible. Neither of the Philyaw brothers is a court official. Article 771 provides for an admonition to the jury when a remark *288 is made during a trial by a court official or a witness which is irrelevant or immaterial and prejudicial to the defendant. A mistrial is not required when trial testimony merely hinted that the defendant might have been engaged in prior criminal conduct. State v. James, 431 So.2d 1075, 1082 (La.App. 2d Cir.1983), writ denied, 439 So.2d 1076 (La.1983). The James witness said she tried to get her car back from defendantwhich did not imply he had unauthorized possession of it. She also commented about being involved in another "court proceeding" with the defendant. The court concluded those comments were not references to another crime.
Mark Philyaw testified that he and his brother, Tommy, had gone to defendant's house on the night in question to collect some money. They agreed to take defendant to Tonya's house "to sell some drugs." Mark said Tommy was unemployed at that time and made a living by selling drugs and collecting money for Bud Cole. Defendant's objection was that the statements implied if Tommy was collecting money owed for drug deals and had gone to defendant's house to collect money, that meant defendant previously had sold drugs. That testimony could have various meanings and was not necessarily a direct reference to another crime by the defendant.
The second challenged testimony was Tommy Philyaw's that at the time of the instant offense, he was dealing meth and picking up money for Bud Cole from Texas and that he had gone to defendant's house "to pick up money". Defendant again moved for mistrial on the same grounds. The court ruled that the jury had not been tainted by the comment and denied the motion. The testimony did not mention past criminal behavior by the defendant. Rather, it referred only to Tommy's behavior of collecting debts. While the testimony might hint at defendant's involvement in prior drug deals, it also might hint at a another type of debt. There is no clear showing that these comments prejudiced defendant's right to a fair trial. The trial court did not err in denying the motions for mistrial.
Even if this court found the foregoing testimony to be references to other crimes committed by the defendant, erroneous introduction of other crimes evidence is subject to a harmless error analysis. State v. Walker, 34,107 (La.App.2d Cir.1/24/01), 778 So.2d 695. Trial error is harmless if the verdict is surely unattributable to the error. Determining whether to grant a mistrial lies within the sound discretion of the trial judge. This court will not disturb the denial of a motion for mistrial unless the trial court has abused that discretion. A witness's voluntary, unresponsive testimony which implicates the defendant in other crimes does not require a mistrial when the form of the prosecutor's question does not indicate bad faith. Walker, supra.
The defendant first objected when Mark testified that Tommy's job for Bud Cole was collecting money and that Tommy made his living selling drugs and collecting money for the drugs. Mark had previously stated they went to defendant's house to get money. The trial court cautioned the district attorney to stay away from testimony which might imply to the jury that defendant was engaged in drug activities. The second mistrial motion was made when the DA asked Tommy Philyaw how the defendant came "to be in the vehicle with you." The witness stated "I went to his house to pick up money." The trial court again denied the request for mistrial. This witness's response was somewhat unresponsive. The question which sought information about the defendant being *289 driven to a location to sell drugs does not reveal bad faith on the part of the DA. The trial court did not abuse its discretion in denying defense requests for mistrial.
Contending that the 15-year sentence is excessive[3], the defendant argues that he should have been given a suspended sentence with a period of probation. A trial court shall not suspend the sentence of a conviction for a crime which is a violation of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961 et seq., punishable by a term of imprisonment for more than five years. La. C. Cr. P. art. 893.[4] Prior to imposing sentence, the district court reviewed the pre-sentence investigation report and filed it into the record. The defendant had two prior drug convictions. Defendant had no one who was dependent upon him "and he's led a life pretty well involved in the drug distribution and trade, not distribution but the use of drugs up until this conviction". The court found the maximum sentence, as recommended by the PSI officer, was not appropriate, and then imposed a sentence of 15 years.
While the trial judge's articulation of reasons for sentence is minimal, the record supports the sentence imposed. The PSI shows defendant, now age 50, completed the 12th grade in Coushatta. He also earned a welding certificate from the Natchitoches Vocational School. His employment record included jobs at Steven Tractors in Coushatta, at a ship yard in Morgan City and most recently as a sandblaster. Divorced, defendant has a 30-year-old daughter and a seven-year-old son. He had a 1973 misdemeanor conviction for possession of marijuana and a 1989 felony conviction for possession of marijuana. He successfully completed probation in both cases. He was arrested in 1997 *290 and charged with possession of a Schedule II CDS, but no disposition was reported. His criminal record and his association with drug dealers indicates an involvement with CDS for all his adult life. Defendant had a sentencing exposure of five to thirty years. This mid-range sentence on a second felony offender with two prior drug convictions does not constitute an abuse of the court's discretion.
Defendant contends there was error patent requiring a remand for resentencing because the district court imposed sentence immediately after denying defendant's motion for new trial, rather than delaying sentencing for at least 24 hours as is required by La. C. Cr. P. art. 873. Although trial defense counsel waived the delay, the record does not show an express waiver of the delay by the defendant himself. Defense counsel's waiver of the 24 hour delay is sufficient. State v. Little, 00-174 (La.App. 5th Cir.7/25/00), 768 So.2d 182, 186. Thus, there was no reversible error in the trial court's immediate imposition of sentence and there is no need to remand for resentencing.

DECREE
The evidence was sufficient beyond a reasonable doubt to support the conviction for possession of amphetamine with intent to distribute. The trial court did not err in denying the motions for mistrial. The sentence was lawfully imposed and is not excessive. The conviction and sentence are AFFIRMED.
NOTES
[1] See State v. Waters, XXXX-XXXX (La.3/12/01), 780 So.2d 1053 and State v. McVan, 99-1021 (La.5/26/99) 743 So.2d 653.
[2] When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.

The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
[3] The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).

Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Past records of drug offenses should weigh heavily in the decision to uphold the imposition of [even] maximum sentences. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. McNair, 597 So.2d 1096 (La.App. 2d Cir.), writ denied, 605 So.2d 1113 (1992).
[4] The sentencing provisions of La. C. Cr. P. art. 893 on suspending sentences on drug convictions were amended by La. Acts 2001, No. 403, effective August 15, 2001. These amendments doe not affect Clark, whose offense occurred in July 1998 and who was sentenced February 26, 2001.