STEWART, J.
11 The defendant, Roland Foster, was convicted after bench trial of Possession with Intent to Distribute a Schedule II Controlled Dangerous Substance, namely Cocaine, and Possession of Marijuana, Third Offense. He was found to be a habitual offender and then was sentenced to two years at hard labor for the marijuana conviction to run concurrently with a sentence of 35 years at hard labor without benefit of probation or suspension for the third felony offense conviction of possession of cocaine with intent to distribute. The defendant now appeals. For the reasons set forth below, we affirm the defendant’s conviction, but vacate the defendant’s sentence, and remand the matter for proceedings in accordance with the habitual offender issue.
*598 FACTS
On the morning of January 29, 2004, the defendant and Lorna Wilson were sleeping in the master bedroom of a house located at 4118 Martha Street in Shreveport. The defendant and Ms. Wilson were awakened when officers entered the home to execute a search warrant. Agent John Witham of the Caddo Parish Sheriffs Office was the first officer to enter into the residence. He approached the defendant and Wilson in the master bedroom and ordered the defendant to get onto the ground. Agent Witham testified that he witnessed the defendant attempting to reach for a SKS rifle that was located in a corner of the room. The defendant and Wilson were subsequently removed from the master bedroom, placed in the living room, and read their Miranda rights, while the officers conducted the search. The officers located marijuana on the floor of the master bedroom, as well as 12crack cocaine in a blue slipper that Agent Witham stated he had witnessed the defendant attempting to slide under the bed when Witham entered the room. The defendant asserted that the officer could not have seen him attempt to kick or slip anything under the bed because, as photos of the scene seemed to indicate, the bed was simply a mattress and box spring set on the floor.
A total of 25 grams of cocaine were found in the slipper, 35 grams of marijuana were found in a jacket located in the master bedroom, and approximately 40 grams of marijuana were found packaged on the floor of the master bedroom. Additionally, approximately $600 cash was found in the pants pocket of a pair of jeans that belonged to the defendant, along with digital scales near the marijuana on the floor. Agent Shron Johnson also found a partially smoked marijuana cigarette on the floor of the master bedroom. Agent Witham testified that the amount of narcotics found in the house coupled with the money and the digital scales was consistent with possession with intent to distribute.
Agent Witham testified that the defendant admitted that the narcotics belonged to him. The defendant asserted that he only said the narcotics were his because Wilson was in college and he wanted to help keep her out of trouble.
While the officers were waiting to transport the defendant and Wilson from the home, another man approached them, later identified as Jacoby Foster. Agent Wit-ham said that Jacoby Foster, the defendant’s cousin, stated that the marijuana belonged to him, but made no mention of the U,cocaine. Wilson and the defendant, as well as Jacoby Foster, Ruthie Foster (the defendant’s grandmother), and Orlando Foster (the defendant’s cousin and Ja-coby Foster’s brother), testified that Jaco-by Foster had stated that everything in the house was his.
Lieutenant Owen McDonnell was called to testify regarding the defendant’s prior convictions for possession of marijuana, but both parties stipulated as to the evidence of the prior convictions.
Several of the defense witnesses referred to the house at 4118 Martha Street as a “family house,” stating that all members of the family were permitted to use it. However, Jacoby Foster testified that only two people lived in the house at that time: himself and his “Auntie.”
Wilson and the defendant both testified that there was no power in the house at 4118 Martha Street. They claimed that they were not aware of anything in the house because they arrived late at night, had sex, fell asleep and did not wake up until the police officers entered the home the following morning.
*599 The trial court found the defendant guilty of both Possession With Intent to Distribute a Schedule II, Controlled Dangerous Substance, Cocaine, and Possession of Marijuana, Third Offense. Because the trial court was unable to determine if the defendant had been guilty of being a felon in possession of a firearm beyond a reasonable doubt, it found the defendant not guilty on that charge.
Motions for post-verdict judgment of acquittal and requesting post-conviction bail was filed and denied. The state initially filed a multiple |,[Offender bill; however, the original multiple offender bill mistakenly charged the possession of marijuana conviction as the third offense and contained the wrong date[1] The trial court permitted the state to amend the bill and an amended bill of information was ultimately filed which charged the cocaine conviction as the third offense and contained the correct conviction date. The defendant waived arraignment and pled not guilty to the multi-bill. Lieutenant Owen McDonnell was called to testify regarding the identity of the defendant through fingerprint analysis. McDonnell stated that the fingerprints found on the two prior bills of information were those of the defendant. The trial court found the defendant to be a third felony habitual offender.
Both parties agreed that sentencing could occur that same day and the defendant was sentenced to two years’ imprisonment at hard labor for the charge of Possession of Marijuana, Third Offense, to be served concurrent with the Habitual Offender Sentence of 35 years at hard labor “without benefit of probation or suspension.” In rendering the sentence for the habitual offender conviction, the trial court stated, “On the other charge, the Court has reviewed Code of Criminal Procedure Article 894.1, I would like to ask if either side has any information they would like to provide that deals with any of the sentencing guidelines.” The trial court then asked the defendant’s age, his education level, the school from which he graduated |s(which the trial court noted was a disciplinary school), the defendant’s work history, his family situation and whether he had children, his prior criminal history, and the amount of drugs involved in the present case. The court then stated:
All right. As I said, I reviewed 894.1. Essentially, it’s the sentence of the Court that you serve 35 years at hard labor. That’s without probation or suspension, and costs to be paid through Inmate Banking. I believe that any other sentence would deprecate the seriousness of the exposure. His exposure was 20 to 60, it’s still something on the low end of the exposure. But I note his age of 29 that, at least, will put him out of the drug business until he gets considerably older, hopefully entirely out of the drug business. I believe the evidence showed he was well into the drug business. He has a history of problems with the law, some don’t rise to the level of felonies, but they still show — they still show a resistance to proper behavior, starting out with Oak Terrace and working his way forward through some of the various misdemeanors and then the unauthorized use and the other drug charges. So I believe that anything less — I believe that’s the least sentence I can give that is consistent with what we’ve seen and what his record is.
The defendant now appeals his conviction and sentence.
*600 DISCUSSION

Sufficiency of the Evidence

In the defendant’s first assignment of error, he contends that the evidence is insufficient to support the verdict of guilty of Possession of Marijuana Third Offense and Possession with Intent to Distribute a Schedule II, Controlled Dangerous Substance. The defense argues that no evidence was presented at trial to support the requirements of La. R.S. 40:966 C & D(3). More specifically, the defense argues that there was no evidence presented to show that the defendant had the intent to distribute the narcotics allegedly in his possession and further, that no evidence was | (¡presented to show that he even had knowledge of the presence of the narcotics in the home. The defense argues that the elements of distribution of cocaine were not met because the state failed to prove the existence of all of the following: “(1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of the transfer; and (8) the exact identity of the controlled dangerous substance.”
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, unit denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson vJ^Virginia and does not extend to credibility determinations made by the trier of fact. State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, unit denied, 2002-2634 (La.9/05/03), 852 So.2d 1020; State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, units denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
To support a conviction for possession of a controlled dangerous substance the state must prove the defendant was in possession of the illegal drug and *601 that he knowingly possessed the drug. State v. Matthews, 552 So.2d 590 (La.App. 2d Cir.1989), writ denied, 559 So.2d 137 (La.1990). The state need not prove that the defendant was in actual physical possession of the drugs found; constructive possession is sufficient to support a conviction. State v. Matthews, supra; State v. Moore, 490 So.2d 588 (La.App. 2 Cir.1986). Constructive possession means having a | ¡¡relationship with an object such that it is subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession. State v. Perez, 569 So.2d 609 (La.App. 2d Cir. 1990), writ denied, 575 So.2d 365 (La. 1991).
Factors which may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are the defendant’s knowledge that illegal drugs were present, evidence of recent drug use, the defendant’s proximity to the drugs, and evidence the area is frequented by drug users. State v. Barthe, 2000-2404 (La.App. 4th Cir.12/27/01), 806 So.2d 53. Another consideration is the defendant’s relationship with the person in actual possession of the drugs. State v. Toney, 99-1574 (La-App. 4th Cir.11/8/00), 796 So.2d 1, unit denied, 2000-3474 (La.11/16/01), 802 So.2d 619.
To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967; State v. Moore, 40,311 (La-App. 2d Cir.1/13/06) 920 So.2d 334, unit denied, 2006-2267 (La.6/1/07), 957 So.2d 167.
The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to | adistribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute. State v. Clark, 35,272 (La.App. 2 Cir. 12/5/01) 803 So.2d 280. Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. State v. Tornabene, 337 So.2d 214 (La.1976); State v. Gladney, 29,791 (La.App. 2d Cir.9/24/97), 700 So.2d 575.
In the instant case, the defendant was charged with possession of marijuana, third offense and possession of cocaine with intent to distribute, for which he was also subsequently charged as a multiple offender and sentenced accordingly.
First, in order to prove possession of marijuana, third offense, the state must prove that the defendant was in possession of marijuana, actual or constructive, and that the possession with which he was charged this time was the third time he would be convicted of possession of marijuana. In order to prove possession of cocaine with intent to distribute, the state must prove that the defendant knowingly and intelligently possessed the cocaine and did so with the intent to distribute it. The intent can be inferred from other circumstances.
Here, a large amount of evidence was presented concerning the defendant’s possession of the marijuana. Agent John Witham, the first officer in the house, testified that he entered the master bedroom where the defendant and Wilson were sleeping and ordered them to remain still, *602 followed by an order to the defendant to get on the floor. The defendant did |1(lso and Witham testified that he witnessed the defendant attempting to shove a slipper under the bed. Subsequent testimony and photographic evidence suggested that it would have been impossible for the defendant to shove a slipper under the bed since the bed consisted of a mattress and box spring resting directly on the floor. Wit-ham, along with several other officers, searched the house pursuant to the search warrant and located, in total, 25 grams of cocaine inside the slipper and 75 grams of marijuana in various other locations. The officers also located two digital scales in the master bedroom and $600 in a jacket that also contained the remaining 35 grams of marijuana. Agent Carl Townley, a Sergeant with the Caddo/Shreveport Narcotic Unit, testified that the amount of cocaine and other evidence found was consistent with distribution.
No drugs were found on the body of the defendant. However, constructive possession does not require that a defendant be in actual physical possession of any substance in order to be found guilty of possession. A defendant can be found to be in constructive possession of a controlled dangerous substance if he exercises dominion and control over that substance. The factors that demonstrate dominion and control are listed above. Here, there was evidence of recent drug use, because Agent Shron Johnson recovered a partially smoked marijuana cigarette that she testified had been recently smoked. The defendant was found in the same house as all of the drugs, and the vast majority of the drugs, along with drug paraphernalia, were found in the master bedroom where the defendant and Wilson were sleeping. The defendant and his witnesses testified that he hadjjjno knowledge of the drugs in the house, because he did not live there most of the time and he entered the house after dark when there was no power and could barely see what was going on around him, let alone notice the presence of drugs in the room he was in. Witham testified, however, that the defendant admitted that the drugs belonged to him. A trier of fact is permitted to make a judgment call regarding the reliability or credibility of a witness’s testimony. Here, the trial judge stated that he believed that the defendant and his witnesses would say anything to keep the defendant out of trouble. The trial court’s credibility determinations are entitled to great deference. The final factor in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession is evidence that the area is used or frequented by drug users. The record does not include any information regarding this factor. However, the other three factors clearly weigh in favor of a finding that the defendant was in constructive possession of both the marijuana and cocaine found in the home.
The next question is whether the evidence was sufficient to find that the defendant was in possession of the cocaine with intent to distribute it. The factors to be considered when determining whether a defendant has intent to distribute (or whether that intent can be inferred) are: (1) whether the drugs are packaged in a form usually associated with distribution; (2) whether there is evidence presented of other sales or attempted sales; (3) whether a large amount or quantity of drugs were found such as to create an inference of intent; (4) the existence of expert or other testimony that states |12the amount of drugs is inconsistent with personal use; and (5) the existence of paraphernalia evidencing the intent to distribute.
Agents Witham and Townley, both accepted by the court as experts in the traf- *603 Ticking of narcotics, testified that the amount of drugs found in the home was consistent with distribution. Digital scales and $600 cash were found in and around the master bedroom. Agent Townley testified as to the packaging of the drugs found in the home. Townley opened the packaging and was able to somewhat describe the contents and amount of drugs inside:
THE WITNESS: Mr. District Attorney, your question was whether or not I think this is consistent with personal use. I would say this is going to be consistent with the sale and distribution of cocaine.
BY MR. BROSSETTE:
Q: And as an expert, why after looking at the drugs coupled with the scales and other factors do you feel that this is someone who intends to distribute this versus someone who only has the cocaine for personal use, could you please explain as an expert? A: Just what I have right here in front of me. Also, along with the information about the actual sales of cocaine from the residence. You have several amounts here. You have a small amount which I would say is consistent with to sell to smaller users [sic ], and then you actually had probably which is probably known as an eight-ball, probably three and a half grams of cocaine here, and they’re all separately packaged. And then you also have the scales to go along with it.
Q: And every one of these — this cocaine isn’t just in one lump sum; it’s broken down into individual pieces where it’s ready for individual street sale; is that correct?
A: That’s correct.
11SQ: And the scales, what would those be used for?
A: They would be used to weigh the cocaine up to make sure. Like I said, one bag could weigh one gram, the other could be three point five grams, which would be an eight ball, for different type of users that want to come purchase.
Considering the testimony and evidence presented, we find that the direct evidence, when viewed in the light most favorable to the state, was sufficient to establish possession of both marijuana, third offense and the possession of cocaine with the intent to distribute. Therefore, this assignment of error is without merit. Assignment of Error Number Two: Right to Counsel
The defendant’s second assignment of error alleges that he was denied his right to counsel guaranteed by the Sixth Amendment and the Fourteenth Amendment of the Constitution of the United States and Article I, § Two and Thirteen of the Louisiana State Constitution. He claims that his counsel was ineffective and that this ineffectiveness caused prejudice in the matter.
The defense argues that counsel failed to file a motion to quash the third felony habitual offender bill and a motion to correct an illegal sentence. The defense asserts that the defendant faced a doubly-enhanced sentence because sentence had already been enhanced pursuant to the Uniform Controlled Substances Act.
The state argues that it did not charge the defendant as a multiple offender for the possession of marijuana charge; rather, the defendant was multi-billed on the charge of possession of cocaine with intent to distribute.
114As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post- *604 conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930. State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139. A motion for new trial is also an accepted vehicle by which to raise such a claim. Id. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,-394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
We decline to consider the allegations of ineffective assistance of counsel. The argument raised on appeal pertains to habitual offender and sentencing issues, which are addressed in this opinion. Moreover, the defendant will have the opportunity to raise any ineffective assistance claims in applications for post-conviction relief. Assignment of Error Number Three: Motion to Quash
In the defendant’s third assignment of error, he asserts that the trial court erred in failing to quash the third felony habitual offender bill of information.
La. C. Cr. P. Article 532 contains the grounds for filing a motion to quash. Subsection (2) states that a motion to quash may be based on the ground that: “[t]he indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.” Subsection (6) of 11sthat provision states another ground that: “[t]rial for the offense charged would constitute double jeopardy.”
La. C. Cr. P. Article 487 allows the amendment of a defective indictment:
A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect of imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
State v. Baker, 2006-2175 (La.10/16/07), 970 So.2d 948, concerned a sentence imposed for a felon in possession of a firearm and stated that such a sentence may also be enhanced under the habitual offender law provided that the offense used as an element in the possession of a firearm offense was not subsequently used to enhance the penalty under the habitual offender statute, as well. This ease overruled prior case law, stating: “We find that a sentence imposed under La. R.S. 14:95.1 may be enhanced under the habitual offender law, as long as the prior felony conviction used as an element in the firearm conviction is not also used as a prior felony conviction in the multiple offender bill of information.” Baker, supra, at 958. The Court overruled State v. Sanders, 337 So.2d 1131 (La.1976), and v. Firmin, 354 So.2d 1355 (La.1978), to the extent that they were not consistent with this ruling.
In State v. Brooks, 43,613 (La.App. 2d Cir.10/29/08), 997 So.2d 688, this court applied the Louisiana Supreme Court’s rea *605 soning in Baker to a case in which a defendant was convicted of possession of marijuana, third offense and the state subsequently filed a habitual offender bill of information. This court stated:
The court in Baker found nothing in the purpose of La. R.S. 14:95.1 that would prevent enhancement of a penalty imposed under its provisions. The same is true of La. R.S. 40:966(E). The Baker court ultimately concluded that a genuine construction of La. R.S. 14:95.1 would allow a sentence imposed under the statute to be enhanced under the habitual offender law as long as the prior felony conviction used as an element of the firearms conviction is not also used as a prior felony conviction in the habitual offender bill of information. Applying that reasoning to the instant case, we conclude that a sentence for possession of marijuana, third offense, can be enhanced under the habitual offender law as long as none of the marijuana convictions are used as prior felony convictions in the habitual offender bill of information.

State v. Brooks, supra.

The defendant alleges that the trial court should have granted his motion to quash the habitual offender bill of information that was filed by trial counsel rather than permitting the state to amend the bill. The quoted Code of Criminal Procedure Articles above show that a trial court is within its discretion to allow the state to amend a bill of information.[2] La. C. Cr. P. Article 487 allows for the amendment of a bill of information for typos or | Nnon-sub-stantive errors at any time and further allows for the amendment of substantive errors prior to trial.
In the present case, the state was permitted to amend the habitual offender bill of information to correct the date of the alleged offense and the offense being used for the multiple offender bill. Despite the fact that these are both substantive changes, the changes were permitted prior to trial on the habitual offender bill and so were permissible pursuant La. C. Cr. P. art. 487.
The defendant then argues that trial counsel should have filed a motion to quash the amended bill of information and that counsel’s failure to file such a motion rendered counsel’s assistance ineffective. The defendant argues that trial counsel should have filed a motion to quash under the ground listed in Article 532(6), “Trial for the offense charged would constitute double jeopardy.” Here, the amended bill of information charged the defendant as a habitual offender on the basis of the cocaine charge, not on the third offense, marijuana possession.[3] The prior offenses were a conviction for “unauthorized use of a vehicle” on October 21, 1997; “possession of Schedule I, marijuana, second offense” on August 25, 1999; and “possession of a controlled dangerous substance ... Schedule I, marijuana, second offense with a beginning date of May 14th, 1998 and continues through September 10, 2003.”
1 isThe marijuana possession conviction was enhanced already because the defendant was charged with and subse *606 quently convicted of third offense possession. However, the conviction for possession of cocaine with intent to distribute had not previously been enhanced. Under the reasoning of the Louisiana Supreme Court in Baker and this court in Brooks, the defendant did face double enhancement of his sentence: the prior possession of marijuana offense that the defendant pled guilty to on August 25, 1999 was used to enhance both the defendant’s sentences under the possession of marijuana, third offense conviction and the possession with intent to distribute conviction.
This assignment of error has merit. Therefore we vacate the habitual offender proceeding and sentence, and we remand the case back to the trial court for further proceedings.

Excessiveness of Sentence

In his fourth assignment of error, the defendant asserts that the trial court erred in imposing upon him an illegal and excessive sentence. In his fifth assignment of error, the defendant argues that the trial court erred in denying his motion to reconsider sentence. In his sixth and final assignment of error, the defendant contends that the trial court failed to adequately comply with the requirements of La. C. Cr. P. art. 894.1 in fashioning Roland Foster’s sentencing. Due to the fact that assignments of error four, five and six are interconnected, we will discuss these errors together.
The defense argues that none of the co-defendants received a sentence as harsh as that received by the defendant. The defense further |19argues that the evidence did not prove guilt beyond a reasonable doubt and that the 35-year sentence shocks one’s sense of justice. The defense further argues that the trial court did not adequately comply with the requirements of La. C. Cr. P. art. 894.1, which would require this court to remand the case to the trial court for re-sentencing.
As we have already determined that this sentence must be vacated, assignments of error four, five and six are moot and the discussion on this subject is pretermitted. On remand, the trial court judge will re-sentence the defendant, and if the defendant believes that the sentence imposed upon remand is excessive, he will have the right to appeal that sentence.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction, but vacate his sentence, and remand the matter for proceedings in accordance with this court’s opinion regarding the habitual offender issue.
We note that the trial court should have advised the defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922. See State v. Pugh, 40,159 (La.App. 2d Cir.9/21/05), 911 So.2d 898. On remand, we advise the trial court to inform the defendant of those rights.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

. The original bill slated that the defendant was convicted on January 29, 2004, when in fact, that was the date that the offense was allegedly committed. The defendant was convicted on October 18, 2007.

. The Code articles speak in terms of indictments; however, it has been inferred in the cases interpreting and comments following these articles that these provisions are applicable to bills of information in the same way they are applied to grand jury indictments.

. The original bill of information charged the defendant as a habitual offender using the third offense possession of marijuana conviction as the subject offense. The amended bill of information substituted the possession of cocaine conviction in the place of the marijuana conviction as the present offense.